IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA

v.

BRIAN SHELBY ANTHONY,
AQEEL MUHSIN RASHEED,
KEITHAN HENRI JAMES,
ROBERT LEE SWAIN, JR.,
RAYFIELD LEWIS, II, and
JARETT JOMOND BROWN,

                Defendants.

CRIMINAL CASE NO.

1:11-CR-0326-SCJ-JFK

## REPORT AND RECOMMENDATION

     Pending before the court are Defendant Jarrett Jomond Brown's motion [Doc.

93] to suppress statement and motions [Docs. 92 and 99] for severance.[1]  An

evidentiary hearing was held on the motion to suppress statement on October 20,

---

     [1]Co-Defendant Brian Anthony is scheduled to enter a guilty plea on January 20,
2012, and has pending a motion [Doc. 89] to participate in voir dire, which has been
deferred to the District Court.  Co-Defendants Aqeel Rasheed, Robert Swain, Jr., and
Rayfield Lewis, II, have pending Jackson v. Denno motions [Docs. 91, 94 and 97] to
suppress statements that have been deferred to the District Court, and co-Defendant
Rasheed has a motion [Doc. 95] to participate in voir dire which has also been deferred
to the District Court.

2011.[2]  [Doc. 104].  Defendant contends that his Sixth Amendment right to counsel was violated by the interrogation conducted on July 18, 2011, because he was not informed that he had been indicted prior to the waiver of his right to counsel.  [Doc. 106].[3]  The Government opposes the motion to suppress statement responding that Defendant's waiver of his right to remain silent and to counsel was knowing, intelligent and voluntary.  [Doc. 116].  Defendant also seeks a severance of Count 1 from Counts 2 through 11 of the Superseding Indictment asserting prejudicial "spill over" from the evidence presented against other Defendants and a severance from his co-Defendants to the extent the Government seeks to introduce the post-arrest statements of one or more of his co-Defendants at a joint trial.  [Docs. 92 and 99].  The Government opposes a severance at this stage of the proceedings.  [Doc. 115].

### Motion to Suppress Statement

## I.     Background Facts

On July 12, 2011, a superseding indictment was returned by a federal grand jury charging Defendant Brown and others with conspiring to possess with the intent to

---

[2]Citations to transcript of evidentiary hearing:  (Tr. at ).

[3]Defendant filed a duplicate of this brief.  [Doc. 108].

distribute a controlled substance, cocaine, in violation of 21 U.S.C. § 846.[4] [Doc. 51]. On July 18, 2011, Special Agents James Hosty and Brian Davis, Federal Bureau of Investigation ("FBI"), observed Defendant Brown's vehicle parked outside the Dunbar Recreation Center, located in Atlanta, and decided to execute the warrant for his arrest which had been issued based on the federal indictment. (Tr. at 4-5). The agents entered the facility and, at the front security desk, asked to speak with Defendant. (Tr. at 5-6). When Defendant approached, the agents asked if they could speak with him in private "about some recent events involving some of his associates[,]" and Defendant escorted the agents to an office. (Tr. at 6). The agents did not advise Defendant that there was an indictment or warrant for his arrest. (Tr. at 6, 15).

Defendant sat behind a desk in the office; Agent Hosty sat in a chair on the other side of the desk; and Agent Davis sat on a couch in the office. (Tr. at 7). Agent Hosty explained that before the agents spoke with him, they had to advise Defendant of his rights and placed an advice of rights form on the desk in front of Defendant. (Tr. at 7; Gov't Ex 1). Defendant stated that he had never been through anything like this before and asked if he should have a lawyer present. (Tr. at 7, 14-15). Agent Hosty

---

[4]The charges in the superseding indictment will be discussed in more detail *infra* with respect to the motions for severance.

responded to Defendant "that that was certainly his right to have an attorney present, that it wasn't required, however, that was something that Mr. Brown had to decide, that I couldn't decide for him." (Tr. at 7, 18). Defendant responded, "okay." (Tr. at 9).

Agent Hosty then read the advice of rights form to Defendant: "Before we ask you any questions, you must understand your rights. You have the right to remain silent. Anything you say can be used against you in court. You have the right to talk to a lawyer for advice before we ask you any questions. You have the right to have a lawyer with you during questioning. If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish. If you decide to answer questions now without a lawyer present, you have the right to stop answering at any time." (Tr. at 8-9). When the agent read the last statement, Defendant Brown asked if that "mean[s] that I can say I don't want to answer a question during the interview." (Tr. at 9). Agent Hosty responded, "absolutely" and told Defendant to advise the agents that he did not want to answer a question and the agents would move to the next question. Defendant replied, "okay." (Tr. at 9). Defendant also stated that he had a friend that he would like to be present for the interview. Agent Hosty asked if the friend was an attorney, and when Defendant responded, no, Agent Hosty stated, "I would prefer that we not have a friend sit in the interview with us." Defendant replied,

4

"okay." (Tr. at 9, 16). Agent Hosty asked Defendant if he waived his rights, and Defendant responded, "Yes." The agent confirmed with Defendant that he did not want a lawyer and that he understood his rights. Defendant replied that he understood and did not want a lawyer. (Tr. at 9). Defendant executed the waiver of rights form. (Tr. at 10; Gov't Ex. 1). The interview was then conducted. (Tr. at 10).

During the entire time with Defendant, the atmosphere was cordial. (Tr. at 6-7). Defendant, who had not been arrested previously, was nervous. (Tr. at 16-17). The agents did not use any force, and their firearms were concealed. (Tr. at 7, 11). They did not make Defendant any promises or threaten him. (Tr. at 7, 11, 15-16). Defendant never asked for a lawyer during the interview and never advised the agents that he did not want to speak with them. (Tr. at 10).

## II. Discussion

In contending that he did not knowingly and intelligently waive his Sixth Amendment right to have counsel present during the interview, Defendant focuses on the fact that the agents did not advise him of the federal grand jury indictment charging him with a violation of the federal drug laws prior to the interview. [Doc. 106]. He argues that, without that information, he did not appreciate the consequences of agreeing to the interrogation and that the waiver of his Fifth Amendment rights did not

5

constitute a valid waiver of his Sixth Amendment right to counsel. [Id.]. The Government, agreeing that Defendant's Sixth Amendment right to counsel had attached at the time of the interview, responds that advising Defendant of his right to remain silent and to have a lawyer adequately advised him of his Sixth Amendment rights and that the waiver was valid. [Doc. 116].

The Sixth Amendment right to counsel "is indispensable to the fair administration of our adversary system of criminal justice." Brewer v. Williams, 97 S. Ct. 1232, 1239 (1977). And, "[w]hatever else it may mean, the right to counsel granted by the Sixth . . . Amendment[ ] means at least that a person is entitled to the help of a lawyer at or after the time that judicial proceedings have been initiated against him 'whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.'" Id. (citations omitted). Defendant's Sixth Amendment right to counsel attached on July 12, 2012, when he was indicted by the federal grand jury, and absent a valid waiver, he was entitled to have counsel present with him during any interview with law enforcement authorities. Fellers v. United States, 124 S. Ct. 1019, 1022 (2004) ("We have held that an accused is denied 'the basic protections' of the Sixth Amendment 'when there [is] used against him at his trial evidence of his own incriminating words, which federal agents . . . deliberately elicited

AO 72A
(Rev.8/82)

from him after he had been indicted and in the absence of his counsel.'") (citation omitted); <u>Brewer</u>, 97 S. Ct. at 1240 ("[O]nce adversary proceedings have commenced against an individual, he has a right to legal representation when the government interrogates him."). The question before the court is whether Defendant validly waived his Sixth Amendment right to counsel prior to that interview. <u>See United States v. Richitelli</u>, 420 Fed. Appx. 861, 867 (11th Cir. 2011) ("A Sixth Amendment violation occurs when (1) government agents (2) deliberately elicit incriminating statements from an accused after he has been indicted, outside the presence of counsel, and (3) in the absence of any waiver of his Sixth Amendment rights."); <u>United States v. Gunn</u>, 369 F.3d 1229, 1237 (11th Cir. 2004) (the Sixth Amendment prohibits admitting a statement deliberately elicited from a defendant by the government after the initiation of adversary criminal proceedings unless counsel is present or there is a valid waiver of the right to counsel).

The Supreme Court has held that a defendant can waive his Sixth Amendment right to counsel and that advising a defendant of his <u>Miranda</u> rights provides adequate guarantees of a knowing and intelligent waiver. <u>Patterson v. Illinois</u>, 108 S. Ct. 2389, 2397 (1988) ("As a general matter, then, an accused who is admonished with the warnings proscribed by the Court in <u>Miranda</u> . . . has been sufficiently apprised of the

nature of his Sixth Amendment rights, and of the consequences of abandoning those rights, so that his waiver on this basis will be considered a knowing and intelligent one."). Accordingly, "[i]f . . . the accused is not represented and has not requested counsel, an advisement of <u>Miranda</u> rights is sufficient to safeguard the Sixth Amendment right, and any statement given following such advice of rights will be presumed to be the product of a voluntary waiver." <u>Gore v. Secretary for the Dep't of Corrections</u>, 492 F.3d 1273, 1302-03 n.68 (11th Cir. 2007). Defendant Brown was advised of his <u>Miranda</u> rights as evidenced by the testimony produced at the hearing.

After asking to speak with Defendant in private and going with him to a private office, Agent Hosty began the interview with Defendant by explaining that before the agents spoke with him, they had to advise Defendant of his rights. The agent placed an advice of rights form on the desk in front of Defendant. (Tr. at 6-7; Gov't Ex 1). Defendant stated that he had never been through anything like this before and asked if he should have a lawyer present. (Tr. at 7, 14-15). Agent Hosty responded to Defendant "that that was certainly his right to have an attorney present, that it wasn't required, however, that was something that Mr. Brown had to decide, that I couldn't decide for him." (Tr. at 7, 18). Defendant responded, "okay." (Tr. at 9). Agent Hosty then read the advice of rights form to Defendant: "Before we ask you any questions,

you must understand your rights. You have the right to remain silent. Anything you say can be used against you in court. You have the right to talk to a lawyer for advice before we ask you any questions. You have the right to have a lawyer with you during questioning. If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish. If you decide to answer questions now without a lawyer present, you have the right to stop answering at any time." (Tr. at 8-9). When the agent read the last statement, Defendant Brown asked if that "mean[s] that I can say I don't want to answer a question during the interview." (Tr. at 9). Agent Hosty responded, "absolutely" and told Defendant to advise the agents that he did not want to answer a question and the agents would move to the next question. Defendant replied, "okay."[5] (Tr. at 9). Agent Hosty asked Defendant if he waived his rights, and Defendant responded, "Yes." The agent confirmed with Defendant that he did not want a lawyer and that he understood his rights. Defendant replied that he understood and did not want a lawyer. (Tr. at 9). Defendant executed the waiver of rights form. (Tr. at 10; Gov't Ex. 1). The interview was then conducted. (Tr. at 10).

---

[5]Defendant also stated that he had a friend that he would like to be present for the interview. Agent Hosty asked if the friend as an attorney, and when Defendant responded, no, Agent Hosty stated, "I would prefer that we not have a friend sit in the interview with us." Defendant replied, "okay." (Tr. at 9, 16).

Defendant does not really challenge the evidence establishing that he was advised of his rights; instead, as noted, he contends that he did not knowingly and intelligently waive his right to have counsel present because he was not advised that he was under indictment prior to questioning. [Doc. 106]. He asserts that he was not able to fully comprehend and appreciate the consequences of agreeing to the interrogation because the agents deliberately failed to inform him about the charges pending against him. [Id.]. The court found no case factually on point in the Eleventh Circuit Court of Appeals nor, with the exception of the Eighth Circuit,[6] in any other circuit. However, the court finds the decisions of both the Supreme Court and the Eleventh Circuit Court of Appeals concerning what information must be imparted to a defendant for a Fifth Amendment waiver to be knowing and intelligent instructive.

In Colorado v. Spring, 107 S. Ct. 851, 857 (1987), the Supreme Court found that a waiver of Miranda rights was knowingly made although the defendant claimed that he was not apprised of the nature of the charges which would be the subject of the interrogation. Finding that the defendant was advised of his right to remain silent and

_____

[6]See United States v. Bryson, 110 F.3d 575, 582 (8th Cir. 1997) ("Our court has held . . . that law enforcement officers, with the consent of a suspect, may question even suspects who are unaware of their own indictment. Our court has further held that the officers have no duty to make such suspects aware of an indictment.").

AO 72A
(Rev.8/82)

of the fact that anything he said could be used against him, the court held, "The Constitution does not require that a criminal suspect know and understand every possible consequence of a waiver of the Fifth Amendment privilege." Id.; see also United States v. Farley, 607 F.3d 1294, 1327-28 (11th Cir. 2010) (extending Spring to intentional communication of misinformation); United States v. Gaddy, 894 F.2d 1307, 1312 (11th Cir. 1990) (same). Nor must a defendant be informed of all the information that might be "useful" in making the decision whether to waive his Miranda rights, such as the offenses to be covered during the interrogation. 107 S. Ct. at 859. Noting that "the additional information could affect only the wisdom of a Miranda waiver," the Court held that "the failure of the law enforcement officials to inform [the defendant] of the subject matter of the interrogation could not affect [the defendant's] decision to waive his Fifth Amendment privilege in a constitutionally significant manner." Id. at 859.

In Farley, the defendant contended that he was tricked by the federal agent who told him that the questioning would concern a terrorism investigation when the purpose of the questioning concerned the defendant's attempted exploitation of a minor. 607 F.3d at 1326. The court noted that the advice of rights form signed by the defendant "conveyed in clear language each of the warnings required by Miranda." Id. at 1328.

The advice of rights form likewise conveys the warnings required by the Sixth Amendment. <u>Patterson</u>, 108 S. Ct. at 2397. The court in <u>Farley</u> stated, "Knowledge of what the agents really suspected him of doing would no doubt have been useful, possibly even decisive, to Farley in calculating the wisdom of answering their questions. But their deception on that point was not 'constitutionally significant,' because the lack of that information did not prevent Farley from understanding the nature of his rights and the legal consequences of waiving them." <u>Id.</u> Similarly in the case before the court, the agents' failure to disclose to Defendant that he was under indictment did not prevent Defendant from understanding his Sixth Amendment right to counsel and the legal consequences of waiving that right. When Defendant asked if he should have an attorney present, the agent honestly told Defendant that only he could make that decision and that the agent could not decide for him. (Tr. at 7, 18). The agent also honestly answered Defendant's question about refusing to answer specific questions by informing Defendant that he could do so and that the agents would honor that decision. (Tr. at 9). These questions posed by Defendant expressed an understanding of his right to counsel and to refuse to answer questions without counsel present, as well as the consequences of waiving those rights.

12

In <u>United States v. Estrella</u>, 2011 WL 4946907 (M.D. Fla. October 17, 2011), the district court applied the reasoning of <u>Farley</u> to the defendant's claim that his Sixth Amendment right to counsel was violated because his waiver, based on being advised of his <u>Miranda</u> rights, was ineffective due to police deception and trickery. <u>Id.</u>, at **3-4. The defendant was arrested and appointed counsel by local authorities in connection with his involvement in drug transactions in Lee County, Florida, which also involved an attempted robbery of the undercover police officer conducting the transactions. A firearm involved in those transactions was determined to have been stolen during a burglary in Cape Coral, Florida. <u>Id.</u>, at **1-2. Officers from Cape Coral, after Defendant was appointed counsel in Lee County, met with the defendant and asked to interview him about the burglary. When asked, the officers advised the defendant that he was not being charged with the burglary. After the defendant waived his <u>Miranda</u> rights, the officers questioned him about the burglary covering areas that overlapped with the drug transactions, particularly the attempted robbery of the undercover officer. <u>Id.</u>, at *2. The defendant was subsequently indicted by a federal grand jury based on facts arising out the Lee County and Cape Coral incidents. <u>Id.</u> The district court held that the Cape Coral officers interrogated the defendant outside the presence of counsel and that those officers deliberately elicited incriminating statements at a time when the

13

defendant's Sixth Amendment right to counsel had attached. Id., at *3. The court found that the defendant had, however, properly waived his Sixth Amendment right to counsel and that the alleged trickery and deceit by the officers did not render his waiver invalid. Id., at *4. The defendant contended that the officers were deceitful in advising him of the reason for the interview which he claimed was really for the purpose of obtaining information about the robbery of the undercover officer. Id., at *5. Although the court found that the officers were not deceitful in conducting the interview, the court stated, "even if the detectives were being deceptive when they said they were investigating the Cape Coral case, nothing about the statement rises to the level which would deprive defendant of knowledge essential to his ability to understand the nature of his rights and the consequences of abandoning them." Id. (citing Farley, 607 F.3d at 1326-31). The same reasoning applies to the facts in this case.

And, "[g]enerally, courts have held statements involuntary because of police trickery only when other aggravating circumstances were also present." Farley, 607 F.3d at 1328. No such circumstances are present in this case. Id. at 1331 ("Looking at the totality of the circumstances, nothing indicates that Farley's waiver of his rights was anything less than knowing and voluntary. The agents never yelled at him or drew

14

their weapons."). During the entire time with Defendant, the atmosphere was cordial. (Tr. at 6-7). Defendant, who had not been arrested previously, was nervous. (Tr. at 16-17). The agents did not use any force, and their firearms were concealed. (Tr. at 7, 11). They did not make Defendant any promises or threaten him. (Tr. at 7, 11, 15-16). Defendant never asked for a lawyer during the interview and never advised the agents that he did not want to speak with them. (Tr. at 10). "By contrast, statements have been held involuntary where the deception took the form of a coercive threat . . . or where the deception goes directly to the nature of the suspect's rights and the consequences of waiving them[.]" 607 F.3d at 1328-29 (citations omitted). Finally, the agents' intent in failing to advise Defendant that he had been indicted is not relevant to the court's inquiry. Id. at 1330 ("It does not matter if the agents deliberately lied to Farley about the subject of the investigation in order to trick him into signing a waiver they thought he might not otherwise have signed. Their subjective motives for the deception are not relevant."). "[T]he only relevant state of mind is that of [Defendant Brown] himself[,]" id., and, based on the record before the court, the court would be speculating at best to posit what Defendant might have done had he been informed of the existence of the indictment.

15

The court finds that Defendant was advised of his Sixth Amendment right to counsel and to refuse to answer questions, as well as of the consequences of waiving those rights. The court further finds that Defendant knowingly, intelligently and voluntarily waived those rights.

## III. Conclusion

For the foregoing reasons and cited authority, the court **RECOMMENDS** that Defendant's motion [Doc. 93] to suppress statement be **DENIED**.

### Motions for Severance

Defendant initially filed a motion seeking to sever Count 1 of the superseding indictment from Counts 2 through 11 pursuant Fed. R. Crim. P. 14 alleging prejudicial "spill over" due to the evidence which will be introduced at trial on the charges not filed against Defendant. [Doc. 92]. At the pretrial conference, the court advised counsel for Defendant that the motion for severance was insufficient to set forth grounds for a Rule 14 severance, <u>see</u> Pretrial Scheduling Order [Doc. 85], and allowed Defendant time to supplement the motion. On September 8, 2011, Defendant filed a perfected motion to sever which did not supplement or provide additional support for the severance of Counts 2 through 11 from Count 1; instead, Defendant set forth facts and argument in support of a severance of his trial from his co-Defendants pursuant

16

to <u>Bruton</u>.  According to Defendant, one or more of his co-Defendants gave post-arrest statements that incriminate him and introduction of those statements at a joint trial will violate his right to confront witnesses against him.  [Doc. 99].  The Government responded to the perfected motion to sever advising that it will not seek to introduce at trial "any non-testifying co-defendant's confession or out-of-court statement which would implicate the Defendant as a participant in the charged crime."  [Doc. 115].

## I.    Procedural History

On July 12, 2011, a federal grand jury returned an eleven count indictment against Defendants Anthony, Rasheed, James, Swain, Lewis and Brown.  [Doc. 51]. Count 1 charges all Defendants with conspiring to possess with the intent to distribute, from on or about May 9, 2011, through on or about June 2, 2011, quantities of cocaine, in violation of 21 U.S.C. § 846.  [<u>Id.</u>].  Counts Two and Four allege that on March 18, 2011, and April 19, 2011, Defendant Anthony possessed with the intent to distribute quantities of marijuana, in violation of 21 U.S.C. § 841, and on those same dates, in Counts Three and Five, Defendant Anthony, who was a detention officer at the Fulton County Jail, attempted to obstruct and affect commerce by extortion, in violation of 18 U.S.C. § 1951.  [<u>Id.</u>].  Count Six also charges that on May 4, 2011, Defendant Anthony possessed with the intent to distribute a quantity of cocaine, in violation of 21 U.S.C.

AO 72A
(Rev.8/82)

§ 841, and on the same date, Count 7 alleges that he attempted to obstruct and affect commerce by extortion, in violation of 18 U.S.C. § 1951. [Id.]. Count 8 charges that on May 18, 2011, Defendants Anthony, Rasheed and James possessed with the intent to distribute a quantity of cocaine, and Count 9 charges that on the same date, Defendant Anthony attempted to obstruct and affect commerce by extortion, in violation of 18 U.S.C. § 1951. [Id.]. Finally, Count 10 charges that on June 2, 2011, Defendants Anthony, Rasheed, Swain, and Lewis possessed with the intent to distribute a quantity of cocaine, and Count 11 charges that on the same date, Defendant Anthony attempted to obstruct and affect commerce by extortion, in violation of 18 U.S.C. § 1951. [Id.].

## II.    Discussion

To the extent that Defendant seeks a severance from the trial of any co-Defendant who gave a post-arrest statement which would incriminate Defendant if introduced at a joint trial, the Government advises that no such statement will be offered against Defendant by a non-testifying co-Defendant. [Docs. 99, 115]. The court recommends that Defendant's motion be denied on this ground. To the extent Defendant seeks to sever Count 1, in which he is named, from the remaining counts of the indictment, Counts 2 through 11, in which he is not named, as noted, the court

AO 72A
(Rev.8/82)

advised Defendant at the pretrial conference that his motion did not set forth a basis for severance pursuant to Rule 14, and Defendant failed to perfect the motion on this ground.

"Rule 14(a) states, 'If the joinder of . . . defendants in an indictment . . . appears to prejudice a defendant or the government, the court may . . . sever the defendants' trials, or provide any other relief that justice requires.'" <u>United States v. Blankenship</u>, 382 F.3d 1110, 1120 (11th Cir. 2004) (citation omitted).  The Eleventh Circuit Court of Appeals further stated, "We have long recognized that 'a District Court confronted with a Rule 14 Motion for Severance is required to balance any . . . prejudice [to the defendants] against the interests of judicial economy, a consideration involving substantial discretion.'" <u>Id.</u> (citation omitted).  "In practice, the general rule is that defendants who are jointly indicted should be tried together, particularly in conspiracy cases." <u>United States v. Baker</u>, 432 F.3d 1189, 1236 (11th Cir. 2005); <u>see also</u> <u>United States v. Browne</u>, 505 F.3d 1229, 1268 (11th Cir. 2007) (same).  To justify severance, a defendant must show compelling prejudice to the conduct of his or her defense resulting in fundamental unfairness.  <u>See</u> <u>Baker</u>, 432 F.3d at 1236; <u>United States v. Schlei</u>, 122 F.3d 944, 984 (11th Cir. 1997).  "'This is a heavy burden, and one which mere conclusory allegations cannot carry.'" <u>United States v. Walser</u>, 3 F.3d 380, 386

(11th Cir. 1993) (quoting <u>United States v. Hogan</u>, 986 F.2d 1364, 1375 (11th Cir. 1993)); <u>see also</u> <u>Browne</u>, 505 F.3d at 1268.

Defendant Brown is charged in a conspiracy to possess with the intent to distribute a controlled substance, that is, a conspiracy involving at least five kilograms of cocaine. [Doc. 51, Count 1]. All of the Defendants named in one or more of the remaining counts of the indictment are also named in Count 1. [Doc. 51]. It is the general rule in conspiracy cases that "defendants indicted together should be tried together." <u>United States v. Cassano</u>, 132 F.3d 646, 651 (11th Cir. 1998); <u>see also</u> <u>Browne</u>, 505 F.3d at 1268 (noting that it "is particularly true in conspiracy cases" that persons indicted together be tried together); <u>United States v. Gossett</u>, 877 F.2d 901, 904 (11th Cir. 1989) ("Generally, coconspirators should be tried jointly."). In order to overcome this presumption and to establish that severance of the remaining counts, not naming Defendant, is mandated pursuant to Rule 14, Defendant must not only show specific prejudice but also that "'there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.'" <u>Blankenship</u>, 382 F.3d at 1123 (citation omitted). Except for the <u>Bruton</u> issue which has been resolved, Defendant

does not make any argument that a specific trial right will be compromised by a joint trial.  [Docs. 92, 99].

The second category mandating a severance, that is, preventing the jury from making a reliable judgment, applies generally to three situations.  "First, severance is mandated where compelling evidence that is not admissible against one or more of the co-defendants is to be introduced against another co-defendant."  <u>Blankenship</u>, 382 F.3d at 1123.  However, this situation does not involve the mere disparity in the quality or amount of evidence introduced against one or more defendants and only applies where there is a minimal chance that limiting instructions will provide adequate relief.  <u>See</u> <u>Baker</u>, 432 F.3d at 1236 (holding that "a defendant does not suffer 'compelling prejudice simply because much of the evidence at trial is applicable only to his codefendants,' . . . even when the disparity is 'enormous'") (quoting <u>Schlei</u>, 122 F.3d at 984).  Defendant has not established that severance is required on this ground.

Severance is also mandated upon a showing of prejudice "in an extremely narrow range of cases in which the sheer number of defendants and charges with different standards of proof and culpability, along with the massive volume of evidence, makes it nearly impossible for a jury to juggle everything properly and assess the guilt or innocence of each defendant independently."  <u>Blankenship</u>, 382 F.3d

21

at 1124. Defendant, likewise, fails to establish that such circumstances apply to this case. And, "[f]inally, severance is required . . . where one defendant is being charged with a crime that, while somehow related to the other defendants or their overall criminal scheme, is significantly different from those of the other defendants." Id. at 1125. This situation also does not apply in this case. Although Defendant Anthony is charged with attempted extortion in connection with his position as a detention officer at the Fulton County Jail, it is apparent that the extortion charges against Defendant Anthony are linked to the drug charges in the indictment bearing the same dates and some which fall within the time frame of the drug conspiracy charged in Count 1. [Id.]. And it appears Defendant Anthony will be entering a plea of guilty negating presentation of evidence at trial solely to prove the extortion counts against him and not otherwise admissible against the remaining Defendants at a separate trial.

Additionally, the District Court as necessary may give appropriate cautionary and limiting instructions to the jury which would cure, or at least greatly alleviate, any potential prejudice.[7] See United States v. Hersh, 297 F.3d 1233, 1244 (11th Cir. 2002)

---

[7]Further, the court notes that if compelling prejudice is established at any point in time, discretion may be exercised by the trial court before or even during trial to grant a severance. See United States v. Pedrick, 181 F.3d 1264, 1272 (11th Cir. 1999) (based on its continuing duty to grant a severance when compelling prejudice is demonstrated, trial court granted a severance of a defendant during the course of trial);

(observing "that the district court affirmatively and repeatedly acted to reduce any unfair prejudice[,]" particularly instructing the jury on the limitation on the consideration of evidence as to each count of the indictment, appellate court found no error in refusal to grant Rule 14 severance); Walser, 3 F.3d at 387 ("[I]f the possible prejudice may be cured by a cautionary instruction severance is not required."); United States v. Harper, 680 F.2d 731, 734 (11th Cir. 1982) (recognizing that cautionary instructions to the jury will support denial of severance). Finally, "'[a]bsent evidence to the contrary, [the court] presume[s] that the jury [will be] able to follow the court's instructions and evaluate the evidence [on each count] independently." Walser, 3 F.3d at 387. In fact, the Supreme Court specifically noted that even if prejudice is shown or the risk of prejudice is high, severance is not required and that "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." Zafiro v. United States, 113 S. Ct. 933, 938 (1993). Thus, Defendant has not

---

United States v. Kopituk, 690 F.2d 1289, 1316 (11th Cir. 1982) ("[T]he court fulfilled its 'continuing duty at all stages of the trial to grant a severance if prejudice does appear.'") (quoting Schaffer v. United States, 80 S. Ct. 945, 948 (1960)). Although the record presented to the court at this stage of the proceedings does not support a grant of a severance, Defendant may renew the severance motion at any time upon a demonstration that denial of the motion would subject him to compelling prejudice such as could not be cured with proper jury instructions.

23

established that a severance is required at this stage of the proceedings based on his claims of prejudice.

## III.    Conclusion

For the foregoing reasons and cited authority, the court **RECOMMENDS** that Defendant's motions [Docs. 92 and 99] for severance be **DENIED**.

### Conclusion

For the reasons stated, the court **RECOMMENDS** that Defendant Brown's motion [Doc. 93] to suppress statement and motions [Docs. 92 and 99] for severance be **DENIED**.

There are no other pending matters before the Magistrate Judge, and the undersigned is aware of no problems relating to the scheduling of this case.

**IT IS THEREFORE ORDERED** and **ADJUDGED** that this action be and the same is hereby, declared Ready for Trial as to all Defendants.

**SO RECOMMENDED AND ORDERED** this 20th day of January, 2012.

JANET F. KING
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)